# ORIGINAL NOTE



ROVITO
LOAN #:

**JANUARY 26, 2005**          **CRANFORD**                    **NEW JERSEY**
[Date]                                [City]                              [State]

**175 PARIS AVENUE, NORTHVALE, NJ 07647**
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $  **298,000.00**  (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is   **FIRST UNITED MORTGAGE COMPANY INC.**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of  **6.250**          %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  **1ST**  day of each month beginning on **MARCH 1, 2005**                     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **FEBRUARY 1, 2035**             , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   **216 NORTH AVENUE EAST, CRANFORD, NJ 07016**

or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $  **1,834.84**

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    **15**    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    **5.000**    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____    1/26/05
- BORROWER - RONALD ROVITO - DATE -

Pay to the order of

Without Recourse
WASHINGTON MUTUAL BANK, FA

By _Michele Mullholand_
MICHELE MULLHOLAND
VICE PRESIDENT

PAY TO THE ORDER OF                                          *[Sign Original Only]*
WASHINGTON MUTUAL BANK, F.A.,
WITHOUT RECOURSE

_Francesca A. Badolato_
BY INDEPENDENCE COMMUNITY BANK,
ATTORNEY IN FACT FOR FIRST UNITED
MORTGAGE
COMPANY, INC.

        FRANCESCA A. BADOLATO
        ASSISTANT SECRETARY

MULTISTATE FIXED RATE NOTE—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3200 1/01
DOCUCFA3                                          (page 3 of 3 pages)
DOCUCFA3.VTX 07/29/2004





ORIGINAL DEED



ORIGINAL

Mortgage
Kathleen A. Donovan    Recording Fee 190.00
Bergen County Clerk
Recorded 03/02/2005 11:13

After Recording Return To:

**FIRST UNITED MORTGAGE COMPANY,
INC.
216 NORTH AVENUE EAST
CRANFORD, NJ 07016**

[Space Above This Line For Recording Data]

## MORTGAGE

ROVITO
LOAN NUMBER:
PARCEL NUMBER:    LOT 6 BLOCK 904

BOOK 1872 PAGE 756

ASSIGNMENT    MAR - 2 2005

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.
**(A) "Security Instrument"** means this document, which is dated    **JANUARY 26, 2005**
together with all Riders to this document.
**(B) "Borrower"** is    **RONALD ROVITO AND JILL ROVITO, HUSBAND AND WIFE**

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is    **FIRST UNITED MORTGAGE COMPANY, INC.**

Lender is a    **CORPORATION**                             organized  and  existing  under  the
laws of    **NEW JERSEY**                       . Lender's address is    **216 NORTH AVENUE
EAST CRANFORD, NJ 07016**
Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated    **JANUARY 26, 2005**
The Note states that Borrower owes Lender
**TWO HUNDRED NINETY-EIGHT THOUSAND AND 00/100**
Dollars (U.S. $    **298,000.00**            ) plus interest. Borrower has promised to pay this
debt in regular Periodic Payments and to pay the debt in full not later than    **FEBRUARY 1, 2035**        .
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ 1-4 Family Rider | ☒ Other(s) [specify]    **LEGAL** | |

**NEW JERSEY**–Single Family–**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                Form 3031 1/01
DOCUINJI
DOCU1NJ1.VTX  06/19/2002                    *(Page 1 of 13 pages)*

# TITLE INSURANCE COMMITMENT
### File Number: M-████
## SCHEDULE A
## LEGAL DESCRIPTION

**All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the** Borough of Northvale, County of Bergen State of New Jersey:

BEGINNING at the point of intersection of the northeasterly sideline of Paris Avenue (46 feet wide) and the northwesterly sideline of Franklin Street (38 feet wide) and from the thence running:

1.      North 52 degrees 32 minutes 00 seconds West, along the northeasterly sideline of Paris Avenue, 100.00 feet to a point; thence

2.      North 37 degrees 32 minutes 30 seconds East 90.00 feet to a point; thence

3.      South 52 degrees 32 minutes 00 seconds East 100.00 feet to a point in the northwesterly sideline of Franklin Street; thence

4.      South 37 degrees 32 minutes 30 seconds West, along the northwesterly sideline of Franklin Street, 90.00 feet to the point and place of BEGINNING.

**NOTE: For Information Only: Being Lot(s)** 6, **Block** 904, **Tax Map of the** Borough of Northvale, **County of** Bergen.

**(H)"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(K) "Escrow Items"** means those items that are described in Section 3.

**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

**(O) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For these purposes, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the    **COUNTY**

(Type of Recording Jurisdiction)

of    **BERGEN**                                    :
(Name of Recording Jurisdiction)

**LEGAL DESCRIPTION AS ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of    **175 PARIS AVENUE**
[Street]

**NORTHVALE**                , New Jersey    **07647**        ("Property Address").
[City]                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3031 1/01
DOCU1NJ2                                    *(Page 2 of 13 pages)*
DOCU1NJ2.VTX  06/19/2002

## LEGAL DESCRIPTION

Loan No.: ▓▓▓▓▓▓▓▓▓

Borrower: RONALD ROVITO

SEE ATTACHED DESCRIPTION RIDER.  ALSO KNOWN AS LOT:  6    BLOCK:  904 ON THE TAX
MAP OF THE BOROUGH OF NORTHVALE, NJ, AND BEING COMMONLY KNOWN AS 175 PARIS
AVENUE.  BEING THE SAME PREMISES CONVEYED TO RONALD ROVITO AND JILL ROVITO,
HUSBAND AND WIFE, BY DEED FROM FLORENCE T. BUONOCORE, UNMARRIED, DATED APRIL 10,
2003 RECORDED IN BOOK 8264, PAGE 832 OF DEEDS FOR BERGEN COUNTY, NJ.  THIS IS A
FIRST MONEY MORTGAGE AND CONSTITUTES A PARAMOUNT LIEN ON THE DESCRIBED PREMISES.

DOCUEXS
DOCUEXS.VTX  12/13/98

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future. If Lender accepts such payments, it shall apply such payments at the time such payments are accepted. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3031 1/01
DOCU1NJ3                                        *(Page 3 of 13 pages)*
DOCU1NJ3.VTX  11/02/2000

BK 1 4 1 7 7 PG 4 3 9

Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3031 1/01
DOCU1NJ4
DOCU1NJ4.VTX  11/02/2000                    *(Page 4 of 13 pages)*

BK 1 4 1 7 7 PG 4 4 0

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3031 1/01
DOCU1NJ5                                                    *(Page 5 of 13 pages)*
DOCU1NJ5.VTX  11/02/2000

BK 1 4 1 7 7 PG 4 4 1

are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01
DOCU1NJ6
DOCU1NJ6.VTX   11/02/2000
*(Page 6 of 13 pages)*

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security

Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3031 1/01
DOCU1NJ8                            *(Page 8 of 13 pages)*
DOCU1NJ8.VTX  11/02/2000

Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3031 1/01
DOCUINJ9                                                        *(Page 9 of 13 pages)*
DOCU1NJ9.VTX  11/02/2000

BK I 4 I 7 7 PG 4 4 5 .

to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property; (e) the Borrower's right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure; and (f) any other disclosure required under the Fair Foreclosure Act, codified at §§ 2A:50-53 et seq. of the New Jersey Statutes, or other Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in**

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3031 1/01
DOCUINJ10                                            *(Page 10 of 13 pages)*
DOCU1NJA.VTX   11/02/2000

BK 1 4 1 7 7 PG 4 4 6

full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence permitted by Rules of Court.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. No Claim of Credit for Taxes.** Borrower will not make deduction from or claim credit on the principal or interest secured by this Security Instrument by reason of any governmental taxes, assessments or charges. Borrower will not claim any deduction from the taxable value of the Property by reason of this Security Instrument.

NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3031 1/01
DOCU1NJ11                          *(Page 11 of 13 pages)*
DOCU1NJB.VTX  06/19/2002

BK I 4 I 7 7 PG 4 4 7

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it. Signed, sealed and delivered in the presence of:

- BORROWER - RONALD ROVITO - DATE -    1/26/05

JILL ROVITO    1/26/05

---

**NEW JERSEY**--Single Family--Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT**    Form 3031 1/01
DOCU1NJ12
DOCU1NJC.VTX  06/019/2002    *(Page 12 of 13 pages)*

[Space Below This Line For Acknowledgment]

**STATE OF  NEW JERSEY**
**COUNTY OF  BERGEN**

Be it remembered, that on this  **26TH**    day of     **JANUARY, 2005**      , before me, the subscriber, a
_____ , personally appeared   **RONALD ROVITO, MARRIED**

who, I am satisfied is/are the grantor(s) named in and who executed the within instrument and   **SHE**
did severally acknowledge that   **SHE**    signed, sealed and delivered the same as   **HER**    act and
deed for the uses and purposes therein expressed.

_____
Notary Public   **ANTHONY F. NATALE**
Title

ANTHONY F. NATALE
AN ATTORNEY AT LAW OF
THE STATE OF NEW JERSEY

**NEW JERSEY--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**           **Form 3031 1/01**
DOCU1NJ13                                                    *(Page 13 of 13 pages)*
DOCU1NJD.VTX  06/19/2002

BK I 4 I 7 7 PG 4 4 9

# OCCUPANCY RIDER TO
## MORTGAGE/DEED OF TRUST/SECURITY DEED

ROVITO
LOAN #: ████████

THIS OCCUPANCY RIDER is made this **26TH** day of **JANUARY, 2005** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") **RONALD ROVITO, MARRIED**

to secure the Borrower's Note (the "Note") to **FIRST UNITED MORTGAGE COMPANY, INC.**

The ("Lender") of the same date and covering the property described in the Security Instrument and located at:
**175 PARIS AVENUE, NORTHVALE, NJ 07647**

(Property Address)

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

1. That the above described property will be personally occupied by the Borrower as a primary residence commencing not later than thirty (30) days after the above date.
2. That if residency is not established as promised above, without further notice, the Lender will be entitled to take any or all of the following actions:
   (A) increase the interest rate on the Note by one-half of one percent (0.50%) per annum, and to adjust the principal and interest payments to the amounts required to pay the loan in full within the remaining term; and/or
   (B) charge a penalty fee of one and one-half percent (1.50%) of the original principal balance by adding that fee to the unpaid principal balance of the loan at the time this fee is determined to be due and adjust the principal and interest payments to the amounts required to pay the loan in full within the remaining term; and/or

WAMU 516                                                                                           (12/01)
DOCURM31
DOCURM31.VTX 04/15/2004                        Page 1 of 2

(C)  require payment to reduce the unpaid principal balance of the loan to the lesser of (1) 70% of the purchase price of the property or (2) 70% of the appraised value at the time the loan was made.  This reduction of the unpaid principal balance shall be due and payable within thirty (30) days following receipt of a written demand for payment, and if not paid within thirty (30) days will constitute a default under the terms and provisions of the Note and Security Instrument; and/or

(D)  declare a default under the terms of the Note and Security Instrument and begin foreclosure proceedings, which may result in the sale of the above described property; and/or

(E)  refer what is believed to be fraudulent acts to the proper authorities for prosecution.  It is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements or reports for the purpose of influencing in any way the action of the Lender in granting a loan on the above property under the provisions of TITLE 18, UNITED STATES CODE, SECTIONS 1010 and 1014.

It is further understood and agreed that any forbearance by the Lender in exercising any right or remedy given here, or by  applicable law, shall not be a waiver of such right or remedy.

It is further specifically agreed that the Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies set forth above, including, but not limited to, reasonable attorney's fee.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Occupancy Rider.

- BORROWER  RONALD ROVITO - DATE -    1/26/05

- DEE ROVITO    1/26/05

WAMU 516                                            (12/01)
DOCURM32
DOCURM32.VTX 04/13/2004              Page 2 of 2

**END OF DOCUMENT**



WHEN RECORDED MAIL TO:
FIRST UNITED MORTGAGE COMPANY, INC.
216 NORTH AVENUE EAST
CRANFORD NJ 07016
ASSIGNMENT #: ███████

Assignment of Mortgage
Kathleen A. Donovan  Recording Fee 40.00
Bergen County Clerk
Recorded 03/02/2005 11:16
BOOK/DOC #:
LOAN #: ███████

(Reserved for recording data)

## ASSIGNMENT OF MORTGAGE

Date: JANUARY 26, 2005

FOR VALUABLE CONSIDERATION, FIRST UNITED MORTGAGE COMPANY, INC.

a corporation under the laws of NEW JERSEY _____, assignor (whether one or more), hereby sells, assigns, and transfers to WASHINGTON MUTUAL BANK, F.A. 2210 ENTERPRISE DRIVE FLORENCE SC 29501
ITS SUCCESSORS AND ASSIGNS, Assignee (whether one or more) the Assignor's interest in the mortgage dated JANUARY 26, 2005 , executed by RONALD ROVITO AND JILL ROVITO, HUSBAND AND WIFE

175 PARIS AVENUE NORTHVALE, NJ 07647
as mortgagor to FIRST UNITED MORTGAGE COMPANY, INC.

as mortgage, and filed for record as Doc. No. _____, on _____ in the County Recorder/Registrar of Titles Office of BERGEN _____ County, NEW JERSEY
together with all right and interest in the note and obligations therein specified and the debt thereby secured. Assignor covenants with Assignee, its successors and assigns, that there is still due and unpaid debt secured by the mortgage the sum of $ 298,000.00 _____ Dollars, with interest thereon from JANUARY 26, 2005 , and that Assignor has good right to sell, assign and transfer the same.

ASSIGNOR: FIRST UNITED MORTGAGE COMPANY, INC.

By _____
PATRICIA A. CAAMANO
Its: SECRETARY

Witness _____

By _____

Its: _____

Witness _____

STATE OF NEW JERSEY
COUNTY OF UNION

The foregoing instrument was acknowledged before me this 26TH day of JANUARY, 2005 by
PATRICIA A. CAAMANO the SECRETARY
and _____
of FIRST UNITED MORTGAGE COMPANY, INC. _____ respectively,

a corporation under the laws of NEW JERSEY _____, on behalf of the corporation.

_____
Signature of Person Taking Acknowledgement
SYDNEY Q. RAPOSO
MY COMMISSION EXPIRES:
NOTARIAL STAMP OR SEAL

THIS INSTRUMENT WAS DRAFTED BY:
LAURA SOFIA
FIRST UNITED MORTGAGE COMPANY, INC.

216 NORTH AVENUE EAST
CRANFORD, NJ 07016

SYDNEY Q. RAPOSO
NOTARY PUBLIC
STATE OF NEW JERSEY
MY APPT. EXPIRES MAY 6, 2009

DK 1 3 7 2 PG 7 5 6

RECORDED SIMULTANEOUSLY
MTGE BOOK 4177 PAGE 435

## END OF DOCUMENT

2ρ53

Assignment of Mortgage
V Bk: 01152 Pg: 1688-1689   Rec. Fee $53.00
John S. Hogan, Bergen County Clerk
Recorded 09/19/2012  01:37:15 PM

**When Recorded Return To:**
JPMorgan Chase Bank, NA
C/O NTC 2100 Alt. 19 North
Palm Harbor, FL 34683

**Loan #:**

## ASSIGNMENT OF MORTGAGE

Contact JPMORGAN CHASE BANK, N.A. for this instrument 780 Kansas Lane, Suite A, Monroe, LA 71203, telephone # (866) 756-8747, which is responsible for receiving payments.

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA, 71203,** (ASSIGNOR), by these presents does convey, grant, sell, assign, transfer and set over the described MORTGAGE with all interest secured thereby, all liens, and any rights due or to become due thereon to **JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, WHOSE ADDRESS IS 700 Kansas Lane, MC 8000, MONROE, LA 71203** (866)756-8747, **ITS SUCCESSORS OR ASSIGNS,** (ASSIGNEE).

Said MORTGAGE dated 01/26/2005, made by: **RONALD ROVITO AND JILL ROVITO** to **FIRST UNITED MORTGAGE COMPANY, INC.** recorded on 03/02/2005 in mortgage Book 14177, Page 435. and/or Instrument # n/a in the office of the Register of Titles/County Recorder in and for BERGEN, New Jersey.

Property address: 175 PARIS AVENUE
NORTHVALE, NJ 07647

This Assignment is made without recourse, representation or warranty, express or implied, by the FDIC in its corporate capacity or as Receiver.

This Assignment is intended to further memorialize the transfer that occured by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. S1821 (d)(2)(G)(i)(II)

IN WITNESS WHEREOF, this Assignment is executed on _07_/_11_/2012 (MM/DD/YYYY)
**FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA,** by JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, its Attorney-in-Fact POA RECORDED: 04/24/2012 DOC#:

By: _Toni C Boland_
        Toni C Boland
    **VICE PRESIDENT**

JPCAS          - WAMU          [C] FRMNJ1_JPCAS3
                                    PAGE (1 of 2)

**Loan #:** ████████

████████████████████████

STATE OF LOUISIANA    PARISH OF OUACHITA

The foregoing instrument was acknowledged before me on __07__ / __11__ /2012 (MM/DD/YYYY), by _____ Ton, Coland _____, as VICE PRESIDENT for JPMORGAN CHASE BANK, NATIONAL ASSOCIATION as Attorney-in-Fact for FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK,FA , who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

Tyler P. Tub

Helen P Tubbs

Notary Public - State of LOUISIANA
Commission expires: Upon My Death

**Prepared By:** E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152

JPCAS ████ -- WAMU ████    [C] FRMNJ1_JPCAS3
PAGE (2 of 2)

████████████████████

After recording please return to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Prepared by:

Law Office of Adam W. Scheinbach
Adam Scheinbach
2500 Johnson Avenue, Suite 8J
Bronx, New York 10463
917-406-9846
PEIRSONPATTERSON, LLP
WILLIAM H. PEIRSON
13750 OMEGA ROAD
DALLAS, TX 75244-4505
800-899-9027

Assignment of Mortgage
V Bk: 01799 Pg: 0744-0748    Rec. Fee $73.00
John S. Hogan, Bergen County Clerk
Recorded 11/24/2014 02:06:20 PM

———————————[Space Above This Line For Recording Data]———————————

Loan No.: ▮
FNMA Loan No.: ▮

# NEW JERSEY ASSIGNMENT OF MORTGAGE

For Value Received, THE FEDERAL DEPOSIT INSURANCE CORPORATION, A CORPORATION ORGANIZED AND EXISTING UNDER AN ACT OF CONGRESS (FDIC), WHOSE ADDRESS IS 1601 BRYAN STREET, DALLAS, TX 75201, AND ACTING IN ITS RECEIVERSHIP CAPACITY AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA, the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto JPMorgan Chase Bank, National Association, (herein "Assignee"), whose address is 700 KANSAS LANE, MC 8000, MONROE, LA  71203, a certain Mortgage dated January 26, 2005 and recorded on March 2, 2005, made and executed by RONALD ROVITO AND JILL ROVITO, to and in favor of FIRST UNITED MORTGAGE COMPANY, INC., upon the following described property situated in BERGEN County, State of New Jersey:
Property Address: 175 PARIS AVENUE, NORTHVALE, NJ 07647

See exhibit "A" attached hereto and made a part hereof.

such Mortgage having been given to secure of U.S.  Two Hundred Ninety Eight Thousand  and 00/100ths ($298,000.00), which Mortgage is of record in Book, Volume, or Liber No. Liber 14177, at Page(s) 435 (or as No. N/A), in the Office of the Register of Deeds and Mortgages of BERGEN County, State of New Jersey.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

New Jersey Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876

Page 1 of 3

L73108NJ 01/12 Rev. 02/14

This Assignment is intended to further memorialize the transfer that occurred by operation of law on September 25, 2008 as authorized by Section 11(d)(2)(G)(i)(II) of the Federal Deposit Insurance Act, 12 U.S.C. §1821(d)(2)(G)(i)(II).

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 10-15-2014.

Assignor:
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA

By: _____
Ariel Hall
Its: _____VICE PRESIDENT_____

New Jersey Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876      Page 2 of 3      L73108NJ 01/12 Rev. 02/14

Bergen County Clerk      V  BK 01799  PG 0746      11/24/2014 02:06 PM      3 of 5

## ACKNOWLEDGMENT

State of Louisiana          §
                                §

Parish of Ouachita         §

      On    this    **15**    day    of    *October 2014*    ,    before    me    appeared
                     *Ariel Hall*               to me personally known, who,
being by me duly sworn (or affirmed) did say that he/she is the   **VICE PRESIDENT**   , of
**JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, AS ATTORNEY IN FACT FOR THE
FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER OF WASHINGTON MUTUAL
BANK F/K/A WASHINGTON MUTUAL BANK, FA**, and that the seal affixed to said instrument is the
corporate seal of said entity and that the instrument was signed and sealed on behalf of the said entity by
authority of its board of directors and that _____ *Ariel Hall* _____
acknowledged the instrument to be the free act and deed of the said entity.

                                           Signature of Officer

                *J. K. Wilson*                     *J. K. Wilson*
              *Notary Public #* ███
              *Ouachita Parish, LA*            Printed Name
              *Lifetime Commission*             *Notary Public*

                                           Title of Officer

(Seal)                                My Commission Expires:   *Lifetime*

New Jersey Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876           Page 3 of 3            L73108NJ 01/12 Rev. 02/14



John S. Hogan
Bergen County Clerk

**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



INSTRUMENT # 14-075533

V 01790 0369

RECORDED DATE: 11/13/2014 11:06:56 AM

---

**Document Type:**    Assignment of Mortgage

**Transaction #:**

**Document Page Count:**    3

**Operator Id:**    CLERK

---

**RETURN TO:**

PEIRSONPATTERSON LLP
ATTN RECORDING DEPT
13750 OMEGA RD
DALLAS  TX
75244

**SUBMITTED BY:**

---

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| JP MORGAN CHASE BANK NA | FEDERAL NATIONAL MORTGAGE ASSOCIATION |

**ASSOCIATED DOCUMENT(S):** MTGE BK 14177 PG 0435

---

**FEES / TAXES:**

| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $40.00 |
| Additional Pages Fee | $20.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| **Total:** | **$63.00** |

**INSTRUMENT #:** 14-075533
**Recorded Date:** 11/13/2014 11:06:56 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

John S. Hogan
Bergen County Clerk

---

OFFICIAL RECORDING COVER PAGE                    Page 1 of 4

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

After recording please return to:
PEIRSONPATTERSON, LLP
ATTN: RECORDING DEPT.
13750 OMEGA ROAD
DALLAS, TX 75244-4505

Prepared by:

Law Office of Adam W. Scheinbach
Adam Scheinbach
2500 Johnson Avenue, Suite 8J
Bronx, New York 10463
917-406-9846
PEIRSONPATTERSON, LLP
WILLIAM H. PEIRSON
13750 OMEGA ROAD
DALLAS, TX 75244-4505
800-899-9027

Assignment of Mortgage
V Bk: 01790 Pg: 0369-0372    Rec. Fee $63.00
John S. Hogan, Bergen County Clerk
Recorded 11/13/2014  11:06:56 AM

————————————[Space Above This Line For Recording Data]————————————

Loan No.:
FNMA Loan No.:

# NEW JERSEY ASSIGNMENT OF MORTGAGE

For Value Received, **JPMorgan Chase Bank, National Association,** the undersigned holder of a Mortgage (herein "Assignor") does hereby grant, sell, assign, transfer and convey, unto **FEDERAL NATIONAL MORTGAGE ASSOCIATION, ITS SUCCESSORS OR ASSIGNS,** (herein "Assignee"), whose address is **14221 Dallas Parkway, Suite 100, Dallas, TX   75254,** a certain Mortgage dated **January 26, 2005** and recorded on **March 2, 2005,** made and executed by **RONALD ROVITO AND JILL ROVITO,** to and in favor of **FIRST UNITED MORTGAGE COMPANY, INC.,** upon the following described property situated in **BERGEN** County, State of New Jersey:
Property Address: **175 PARIS AVENUE, NORTHVALE, NJ 07647**

**See exhibit "A" attached hereto and made a part hereof.**

such Mortgage having been given to secure of U.S. **Two Hundred Ninety Eight Thousand  and 00/100ths ($298,000.00),** which Mortgage is of record in Book, Volume, or Liber No. Liber **14177,** at Page(s) **435** (or as No. N/A), in the Office of the Register of Deeds and Mortgages of **BERGEN** County, State of New Jersey.

TO HAVE AND TO HOLD, the same unto Assignee, its successor and assigns, forever, subject only to the terms and conditions of the above-described Mortgage.

New Jersey Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876                Page 1 of 2                L73108NJ 01/12 Rev. 02/14

Contact Federal National Mortgage Association for this instrument c/o Seterus, Inc., 14523 SW Millikan Way, #200, Beaverton, OR 97005, telephone #1-866-570-5277, which is responsible for receiving payments.

IN WITNESS WHEREOF, the undersigned Assignor has executed this Assignment of Mortgage on 10-15-2014 .

Assignor:
JPMorgan Chase Bank, National Association

By: _____
*Ariel Hall*

Its: _____ **VICE PRESIDENT** _____

**ACKNOWLEDGMENT**

State of **Louisiana** §
§
Parish of **Ouachita** §

On this **15** day of October 2014 before me appeared *Ariel Hall* to me personally known, who, being by me duly sworn (or affirmed) did say that he/she is the **VICE PRESIDENT** , of **JPMorgan Chase Bank, National Association**, and that the seal affixed to said instrument is the corporate seal of said entity and that the instrument was signed and sealed on behalf of the said entity by authority of its board of directors and that *Ariel Hall* acknowledged the instrument to be the free act and deed of the said entity.

_____
Signature of Officer

*Y. K. Wilson*
*Notary Public #* ▮▮▮
*Ouachita Parish, LA*
*Lifetime Commission*

*Y. K. Wilson*
Printed Name

*Notary Public*
Title of Officer

(Seal)

My Commission Expires: *Lifetime*

New Jersey Assignment of Mortgage
JPMorgan Chase Bank N.A. Project W2876               Page 2 of 2                    L73108NJ 01/12 Rev. 02/14

John S. Hogan
Bergen County Clerk



**Bergen County Clerk**
One Bergen County Plaza
Hackensack, NJ 07601
(201) 336-7000
www.bergencountyclerk.org/



**INSTRUMENT # 19-040036**

**V 03276 0343**

**RECORDED DATE:** 06/25/2019 10:43:42 AM

| | |
|---|---|
| **Document Type:** Assignment of Mortgage | **Transaction #:** ▮▮▮ |
| | **Document Page Count:** 1 |
| | **Operator Id:** CLERK |

| RETURN TO: | SUBMITTED BY: |
|---|---|
| SHAPIRO & DENARDO, LLC.<br>14000 COMMERCE PARKWAY, SUITE B<br>MOUNT LAUREL  NJ  08054<br>ERECORDED | Shapiro & DeNardo, LLC.<br><br><br>(856) 793-3080 |

| PRIMARY NAME | SECONDARY NAME |
|---|---|
| FEDERAL NATIONAL MORTGAGE ASSOCIATION | NATIONSTAR MORTGAGE LLC |

| ADDITIONAL PRIMARY NAMES | ADDITIONAL SECONDARY NAMES |
|---|---|
| NATIONSTAR MORTGAGE LLC | MR COOPER |

**MARGINAL REFERENCES:**    MTGE ▮▮▮▮

**DOCUMENT DATE:**  05/08/2019
**MUNICIPALITY:** BERGEN COUNTY

**FEES / TAXES:**
| | |
|---|---|
| Recording Fee: Assignment of Mortgage | $40.00 |
| Homeless Trust Fund - Bergen County | $3.00 |
| **Total:** | **$43.00** |

**INSTRUMENT #:** 19-040036
**Recorded Date:** 06/25/2019 10:43:42 AM

I hereby CERTIFY that this document is recorded in the Clerk's Office in Bergen County, New Jersey.

*John S. Hogan*

**John S. Hogan
Bergen County Clerk**

**Recording Fees:** $43.00
**Realty Transfer Tax Fees:** $0.00

## OFFICIAL RECORDING COVER PAGE

Page 1 of 2

# PLEASE DO NOT DETACH
## THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

Recording Requested By:
NATIONSTAR MORTGAGE DBA MR. COOPER

When Recorded Return To:

DOCUMENT ADMINISTRATION
NATIONSTAR MORTGAGE DBA MR. COOPER
8950 CYPRESS WATERS BLVD
COPPELL, TX 75019

## CORPORATE ASSIGNMENT OF MORTGAGE

Bergen, New Jersey
SELLER'S SERVICING #▇▇▇▇▇▇ "ROVITO"

Date of Assignment: May 8th, 2019
Assignor: FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS
ATTORNEY-IN-FACT at 8950 CYPRESS WATERS BLVD, COPPELL, TX 75019
Assignee: NATIONSTAR MORTGAGE LLC D/B/A MR. COOPER at 8950 CYPRESS WATERS BLVD., COPPELL,
TX 75019

Executed By: RONALD ROVITO AND JILL ROVITO, HUSBAND AND WIFE  To: FIRST UNITED MORTGAGE
COMPANY INC.
Date of Mortgage: 01/26/2005 Recorded: 03/02/2005 in Book/Reel/Liber: 14177 Page/Folio: 435 In the County of
Bergen, State of New Jersey.

    KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of
which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said
Mortgage having an original principal sum of $298,000.00 with interest, secured thereby, and the full benefit of all the
powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys
unto the said Assignee, the Assignor's interest under the Mortgage.

    TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the
terms contained in said Mortgage.

FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT
On May 8th, 2019

By: _____
Sylvia Ramirez, Vice-President

STATE OF Texas
COUNTY OF Dallas

On May 8th, 2019, before me, DANIELA HORVATH, a Notary Public in and for Dallas in the State of Texas,
personally appeared Sylvia Ramirez, Vice-President of FEDERAL NATIONAL MORTGAGE ASSOCIATION, BY
NATIONSTAR MORTGAGE LLC, ITS ATTORNEY-IN-FACT , personally known to me (or proved to me on the basis
of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her/their authorized capacity, and that by
his/her/their signature on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

WITNESS my hand and official seal,

_____
DANIELA HORVATH
Notary Expires: 01/27/2020  #▇▇▇▇▇▇

```
          DANIELA HORVATH
   ★    Notary Public, State of Texas
        Comm. Expires 01-27-2020
            Notary ID ▇▇▇▇▇
```

(This area for notarial seal)

Return Recorded Document To:
Washington Mutual Bank, FA
David Gates
Settlement Specialist II
7301 Baymeadows Way
Jacksonville, FL 32256
Mail Stop: JAXA2000
Loan #████████/ROVITO
Investor Loan #████████

Mail Tax Statement To:
Transamerica
6053 S. Fashion Square Drive
Suite 200
Murray, UT 84107

_____(Space Above This Line for Recording Data)_____

# LOAN MODIFICATION AGREEMENT
## PROVIDING FOR FIXED INTEREST RATE

This Loan Modification Agreement ("Agreement"), made this **18TH** day of **MAY, 2006** between **RONALD ROVITO AND JILL ROVITO, HUSBAND AND WIFE,** ("Borrower") residing at **175 PARIS AVENUE, NORTHVALE, NEW JERSEY    07647,** and **WASHINGTON MUTUAL BANK, FA,** ("LENDER") with an address of c/o 7301 Baymeadows Way, Jacksonville, FL 32256, amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), dated **JANUARY 26, 2005,** recorded **MARCH 2, 2005,** in **BOOK NO. 14177, PAGE NO. 435,** in the Official Records of the **Clerk** of **BERGEN County, State of NEW JERSEY,** in the original principal sum of    **$ 298,000.00** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real personal property described in the Security Instrument and defined therein as the 'Property', located at   **175 PARIS AVENUE    NORTHVALE, NEW JERSEY 07647**  the real property described being set forth as follows:

### LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
### PARCEL ID NUMBER: LOT 6   BLOCK 904

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    The unpaid principal balance of this Mortgage prior to the execution of the Loan Modification Agreement was **$ 294,807.39.** As of   **JUNE 1, 2006** the amount payable under the Note and the Security Instrument the ("Unpaid Principal Balance") is U.S. **$ 303,827.71,** consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date.

2.    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender or as Lender directs. Interest will be charged on the unpaid balance at the rate of **6.250%,** as defined in the Note, commencing **JUNE 1, 2006** and Borrower agrees to make monthly payments of principal and interest in the amount of **$ 1,900.73** commencing on **JULY 1, 2006** and each and every month thereafter on the same day of each succeeding month until the principal and interest are fully paid.  If on **FEBRUARY 1, 2035**   (the "Maturity Date"), the borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity date.

**The Borrower will make such payments at P.O. Box 3200, Milwaukee, WI  53201 or at such other place as the Lender may require.**

1

3.     If all or any part of the Property or any interest in it is sold or transferred (or if a Beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

      If the Lender exercises this option, the lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4.     The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

5.     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

By: _____
    RONALD ROVITO / Borrower

By: _____
    JILL ROVITO - Borrower

By: _____
    TREANA HIGGINBOTHAM - VICE PRESIDENT
    WASHINGTON MUTUAL BANK, FA

2

_____(Space Below This Line for Acknowledgments)_____

**\*\* NOTARY FOR BORROWER**

STATE OF _New Jersey_

COUNTY OF _Bergen_

On _June 2,_ _____, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared **RONALD ROVITO** and **JILL ROVITO** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to be within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Laura Benvenuto_

My Commission Expires: _April 16, 2007_

LAURA BENVENUTO
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 16, 20__

**\*\*NOTARY FOR LENDER**

STATE OF FLORIDA
COUNTY OF DUVAL

On _____ _June 8,_ _____ 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared **TREANA HIGGINBOTHAM**, Vice President, respectively, of **Washington Mutual Bank, FA**, personally known to me (or proved to me on the basis of satisfactory evidence), whose name is subscribed to be within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Deborah Ann Fields_

My Commission Expires: _3-28-2010_

DEBORAH ANN FIELDS
MY COMMISSION # DD
EXPIRES: March 28, 2010
Bonded Thru Notary Public Underwriters

This instrument was prepared by:

Washington Mutual Bank, FA
David Gates
Settlement Specialist II
7301 Baymeadows Way
Jacksonville, FL 32256
Mail Stop: JAXA2000

3

RECORD AND RETURN TO:
FIRST AMERICAN TITLE
P.O. BOX 27670
SANTA ANA, CA  92799-7670
ATTN: LMTS

[Space Above This Line for Recording Data]

Original Principal Amount: $   298,000.00                          Loan No.
Original Recorded Date: MARCH 2, 2005                    Fannie Mae Loan No.

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this   **4TH**  day of  **JANUARY, 2008**     ,
between  **RONALD ROVITO AND JILL ROVITO, HUSBAND AND WIFE**

("Borrower") and  **WASHINGTON MUTUAL BANK**

("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security
Instrument"), and Timely Payment Rewards Rider, if any, dated  **JANUARY 26, 2005**          and recorded in
Book or Liber, **14177, at page(s) 435**                                   , of the          Official Records of
                                                                (Name of Records)
**BERGEN COUNTY, NEW JERSEY**                              and (2) the Note, bearing the same date as,
                              (County and State, or other Jurisdiction)
and secured by, the Security Instrument, which covers the real and personal property described in the Security
Instrument and defined therein as the "Property", located at

**175 PARIS AVENUE, NORTHVALE, NEW JERSEY 07647**
                                        (Property Address)

the real property described being set forth as follows:

**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

**LOAN MODIFICATION AGREEMENT** - Single Family - Fannie Mae Uniform Instrument          Form 3179  1/01 (rev. 6/06)
FAND# 3179 Rev. 08-13-07                                                              *(page 1 of 5)*

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note and Security Instrument):

1.  As of **JANUARY 1, 2008**                , the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $      **330,332.62**          , consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of      **6.250**      %, from **JANUARY 1, 2008**          . Borrower promises to make monthly payments of principal and interest of U.S. $      **2,110.58**      , beginning on the   **1ST** day of **FEBRUARY, 2008**   , and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of      **6.250**      % will remain in effect until principal and interest are paid in full. If on   **FEBRUARY 01, 2035**          (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

4.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

---

5.    Borrower understands and agrees that:

(a)    All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

(b)    All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law.  Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(c)    Borrower has no right of set-off or counterclaim, or any defense to the obligations of the Note or Security Instrument.

(d)    Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e)    All costs and expenses incurred by Lender in connection with this Agreement, including recording fees, title examination, and attorney's fees, shall be paid by the Borrower and shall be secured by the Security Instrument, unless stipulated otherwise by Lender.

(f)    Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

**WASHINGTON MUTUAL BANK**

_____    -Lender

By: Julie H. Mathis, Assistant Vice President

_____

RONALD ROVITO                                        -Borrower

_____

JILL ROVITO                                          -Borrower

_____

                                                     -Borrower

_____

                                                     -Borrower

_____

                                                     -Borrower

_____

                                                     -Borrower

**LOAN MODIFICATION AGREEMENT** - Single Family - Fannie Mae Uniform Instrument        **Form 3179**  1/01 (rev. 6/06)
FAND# 3179-4  Rev. 08-13-07                                                            _(page 4 of 5)_

---
[Space Below This Line For Acknowledgment] _____

## BORROWER ACKNOWLEDGMENT

State of New Jersey

County of Bergen

I CERTIFY that on January 8, 2008

**RONALD ROVITO AND JILL ROVITO**

personally appeared before me and acknowledged under oath, to my satisfaction, that this person (or if more than one each persons):

    a.  is named in and personally signed the within instrument; and

    b.  signed, sealed and delivered the same as his/her/their act and deed.

Signature Laura Benvenuto

**LAURA BENVENUTO**
**NOTARY PUBLIC OF NEW JERSEY**

Title Notary Public

My Commission Expires April 16, 2012

## LENDER ACKNOWLEDGMENT

STATE OF Florida         COUNTY OF Duval

The foregoing instrument was acknowledged before me this 2nd day of February, 08 by

**Julie A. Mathis**, the ASSISTANT VICE PRESIDENT

of Washington Mutual Bank

a _____, on behalf of said entity.

Signature of Person Taking Acknowledgment Lorrie A. Anderson

Printed Name Lorrie A. Anderson

Title or Rank Notary

Serial Number, if any _____

Notary Public State of Florida
Lorrie A Anderson
My Commission DD611869 (Rev. 6/06)
Expires 04/03/2011

**LOAN MODIFICATION AGREEMENT** - Single Family - Fannie Mae Uniform Instrument
FAND# NJ3179-S Rev. 05-16-03

**THIS DOCUMENT WAS PREPARED BY:**
**KATIE MCCLAIN**
**WASHINGTON MUTUAL BANK**
**7255 BAYMEADOWS WAY**
**JACKSONVILLE, FL 32256**

x Katie McClain

ROVITO
175 PARIS AVENUE
NORTHVALE, NEW JERSEY 07647
WASHINGTON MUTUAL BANK

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____    1/8/08
Borrower                                                                                          Date
**RONALD ROVITO**

_____    1/8/08
Borrower                                                                                          Date
**JILL ROVITO**

_____    _____
Borrower                                                                                          Date

_____    _____
Borrower                                                                                          Date

_____    _____
Borrower                                                                                          Date

_____    _____
Borrower                                                                                          Date

FAND# FAND033 Rev. 06-11-02



ROVITO
175 PARIS AVENUE
NORTHVALE, NEW JERSEY 07647
WASHINGTON MUTUAL BANK

# ERRORS AND OMISSIONS
# COMPLIANCE AGREEMENT

In consideration of
**WASHINGTON MUTUAL BANK**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

RONALD ROVITO _____  1/8/08
                                                  Date

JILL ROVITO _____  1/8/08
                                                  Date

_____
                                                  Date

_____
                                                  Date

_____
                                                  Date

_____
                                                  Date

FAND# FAND034 Rev. 06-18-02

Return Recorded Document To:
Washington Mutual Bank, FA
David Gates
Settlement Specialist II
7301 Baymeadows Way
Jacksonville, FL 32256
Mail Stop: JAXA2000
Loan # ▓▓▓▓▓/ROVITO
Investor Loan # ▓▓▓▓▓

Mail Tax Statement To:
Transamerica
6053 S. Fashion Square Drive
Suite 200
Murray, UT 84107

_____(Space Above This Line for Recording Data)_____

# LOAN MODIFICATION AGREEMENT
## PROVIDING FOR FIXED INTEREST RATE

This Loan Modification Agreement ("Agreement"), made this **18TH** day of **MAY, 2006** between **RONALD ROVITO AND JILL ROVITO, HUSBAND AND WIFE,** ("Borrower") residing at **175 PARIS AVENUE, NORTHVALE, NEW JERSEY    07647,** and **WASHINGTON MUTUAL BANK, FA,** ("LENDER") with an address of c/o 7301 Baymeadows Way, Jacksonville, FL   32256, amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the "Security Instrument"), dated **JANUARY 26, 2005,** recorded   **MARCH 2, 2005,** in **BOOK NO. 14177, PAGE NO. 435,** in the Official Records of the **Clerk** of **BERGEN County, State of NEW JERSEY,** in the original principal sum of   $ **298,000.00** and (2) the Note bearing the same date as, and secured by, the Security Instrument, which covers the real personal property described in the Security Instrument and defined therein as the 'Property', located at   **175 PARIS AVENUE   NORTHVALE, NEW JERSEY 07647**  the real property described being set forth as follows:

### LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF.
### PARCEL ID NUMBER: LOT 6   BLOCK 904

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.    The unpaid principal balance of this Mortgage prior to the execution of the Loan Modification Agreement was $ **294,807.39.** As of   **JUNE 1, 2006** the amount payable under the Note and the Security Instrument the ("Unpaid Principal Balance") is U.S. $ **303,827.71,** consisting of the amount(s) loaned to the Borrower by the Lender and any interest capitalized to date.

2.    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender or as Lender directs. Interest will be charged on the unpaid balance at the rate of **6.250%,** as defined in the Note, commencing **JUNE 1, 2006** and Borrower agrees to make monthly payments of principal and interest in the amount of **$ 1,900.73** commencing on **JULY 1, 2006** and each and every month thereafter on the same day of each succeeding month until the principal and interest are fully paid.  If on **FEBRUARY 1, 2035**   (the "Maturity Date"), the borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, the Borrower will pay these amounts in full on the Maturity date.

**The Borrower will make such payments at P.O. Box 3200, Milwaukee, WI  53201 or at such other place as the Lender may require.**

1

3.     If all or any part of the Property or any interest in it is sold or transferred (or if a Beneficial interest in the Borrower is sold or transferred and the Borrower is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

       If the Lender exercises this option, the lender shall give the Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower must pay all sums secured by this Security Instrument. If the Borrower fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower.

4.     The Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower is obligated to make under the Security Instrument.

5.     Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

By: _____

    RONALD ROVITO / Borrower

By: _____

    JILL ROVITO - Borrower

By: _____

    TREANA HIGGINBOTHAM - VICE PRESIDENT
    WASHINGTON MUTUAL BANK, FA

2

_____(Space Below This Line for Acknowledgments)_____

**\*\* NOTARY FOR BORROWER**

STATE OF _New Jersey_

COUNTY OF _Bergen_

On _June 2,_____, 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared **RONALD ROVITO** and **JILL ROVITO** personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name is/are subscribed to be within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_Laura Benvenuto_

My Commission Expires: _April 16, 2007_

LAURA BENVENUTO
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires April 16, 20 07

**\*\*NOTARY FOR LENDER**

STATE OF FLORIDA
COUNTY OF DUVAL

On ____June 8,_____ 2006, before me, the undersigned, a Notary Public in and for said State, personally appeared **TREANA HIGGINBOTHAM**, Vice President, respectively, of **Washington Mutual Bank, FA**, personally known to me (or proved to me on the basis of satisfactory evidence), whose name is subscribed to be within instrument and acknowledged to me that he/she executed the same in his/her authorized capacity and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Deborah Ann Fields_

My Commission Expires: _3-28-2010_

DEBORAH ANN FIELDS
MY COMMISSION # D■■■■■
EXPIRES: March 28, 2010
Bonded Thru Notary Public Underwriters

This instrument was prepared by:                Washington Mutual Bank, FA
David Gates
Settlement Specialist II
7301 Baymeadows Way
Jacksonville, FL  32256
Mail Stop: JAXA2000

3

After Recording Return To:
**JPMORGAN CHASE BANK, N.A.**
**CHASE RECORDS CENTER**
**RE: COLLATERAL TRAILING**
**DOCUMENTS**
**PO BOX 8000**
**MONROE, LA 71203**

Release
V Bk: 00816 Pg: 0994-1003   Rec. Fee $133.00
Elizabeth Randall, Bergen County Clerk
Recorded 08/25/2011  10:34:43 AM

This Document Prepared By:
~~ELVEDINA MURANOVIC,~~ JOHN COX
**OPERATIONS SR. SPECIALIST**
**JPMORGAN CHASE BANK, N.A.**
**2210 ENTERPRISE DRIVE**
**FLORENCE, SC 29501-1109**
Signature: _Joel Cox_

——————————————— [Space Above This Line For Recording Data] ———————————————

# HOME AFFORDABLE MODIFICATION AGREEMENT

AKA JILL M ROVITO      **Loan Number**

Borrower ("I"):[1] **RONALD ROVITO AND JILL ROVITO HUSBAND AND WIFE**
Lender or Servicer ("Lender"): **JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY**
**PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A**
**WASHINGTON MUTUAL BANK, FA**
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **JANUARY**
**26, 2005**
Loan Number:
Property Address ("Property"): **175 PARIS AVE, NORTHVALE, NEW JERSEY 07647**

**LEGAL DESCRIPTION:**
**ALL THAT CERTAIN TRACT, LOT AND PARCEL OF LAND LYING AND BEING IN THE**
**BOROUGH OF NORTHVALE, COUNTY OF BERGEN AND STATE OF NEW JERSEY, BEING**
**MORE PARTICULARLY DESCRIBED AS FOLLOWS: KNOWN AND DESIGNATED AS LOTS NO.**
**28, 29 AND 30 IN BLOCK NO. 6 AS SHOWN AND LAID DOWN ON A CERTAIN MAP ENTITLED**
**"PLAN OF CARRIEVILLE, HARRINGTON TOWNSHIP, BERGEN COUNTY, NEW JERSEY" FILED**
**IN THE BERGEN COUNTY CLERK'S OFFICE ON APRIL 5, 1866 AS MAP NO. 71. BEING**
**FURTHER DESCRIBED IN ACCORDANCE WITH A SURVEY PREPARED BY JOB AND JOB, C.E.**
**AND L.S. DATED JANUARY 11, 2000 AS FOLLOWS: BEGINNING AT THE POINT OF**

---

[1] If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document
words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie**
**Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06_11_2011_12_06_47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)**
*(page 1 of 10 pages)*

**Loan Number** ▮▮▮▮▮

**INTERSECTION OF THE NORTHEASTERLY SIDELINE OF PARIS AVENUE (46 FEET WIDE) AND THE NORTHWESTERLY SIDELINE OF FRANKLIN STREET (38 FEET WIDE) AND FROM THENCE RUNNING: 1. NORTH 52 DEGREES 32 MINUTES 00 SECONDS WEST, ALONG THE NORTHEASTERLY SIDELINE OF PARIS AVENUE, 100.00 FEET TO A POINT; THENCE 2. NORTH 37 DEGREES 32 MINUTES 30 SECONDS EAST 90.00 FEET TO A POINT; THENCE 3. SOUTH 52 DEGREES 32 MINUTES 00 SECONDS EAST 100.00 FEET TO A POINT IN THE NORTHWESTERLY SIDELINE OF FRANKLIN STREET; THENCE 4. SOUTH 37 DEGREES 32 MINUTES 30 SECONDS WEST, ALONG THE NORTHWESTERLY SIDELINE OF FRANKLIN STREET, 90.00 FEET TO THE POINT AND PLACE OF BEGINNING. BLOCK 904 LOT 6**

**REFERENCE NUMBERS OF DOCUMENTS MODIFIED:**
**RECORDED MARCH 2, 2005 BOOK 14177 PAGE 435** IN THE AMT OF $298,000.00
**Tax Parcel No:** ▮▮▮▮▮▮▮▮▮

If my representations and covenants in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1.　　**My Representations and Covenants.** I certify, represent to Lender, covenant and agree:

　　A.　　I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

　　B.　　One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

　　C.　　There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

　　D.　　I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification Program ("Program"));

　　E.　　Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;

　　F.　　If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 2 of 10 pages)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Loan Number

G.   I have made or will make all payments required under a trial period plan.
H.   If I was discharged in a Chapter 7 bankruptcy proceeding subsequent to the execution of the Loan Documents, Lender agrees that I will not have personal liability on the debt pursuant to this Agreement.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

A.   If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct or any covenant in Section 1 has not been performed, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3.   **The Modification.** If my representations and covenants in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become modified on **JULY 01, 2011** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a trial period plan, this modification will not take effect. The first modified payment will be due on **JULY 01, 2011.**

A.   The Maturity Date will be: **JUNE 01, 2051**.

B.   The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$377,340.97** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

C.   **$38,100.00** of the New Principal Balance shall be deferred (the "Deferred Principal Balance") and I will not pay interest or make monthly payments on this amount. The New Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is **$339,240.97**. Interest at the rate of **2.000%** will begin to accrue on the Interest Bearing Principal Balance as of **JUNE 01, 2011** and the first new monthly payment on the Interest Bearing Principal Balance will be due on **JULY 01, 2011.** My payment schedule for the modified Loan is as follows:

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 3 of 10 pages)

**Loan Number** ▮▮▮▮▮▮▮

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins on | Number of Monthly Payments |
|-------|---------------|---------------------------|-----------------------------------------------|------------------------------------------|------------------------|-------------------|----------------------------|
| 1-5 | 2.000% | 06/01/2011 | $1,027.31 | $818.63 May adjust periodically | $1,845.94 May adjust periodically | 07/01/2011 | 60 |
| 6 | 3.000% | 06/01/2016 | $1,193.49 | May adjust periodically | May adjust periodically | 07/01/2016 | 12 |
| 7 | 4.000% | 06/01/2017 | $1,368.91 | May adjust periodically | May adjust periodically | 07/01/2017 | 12 |
| 8-40 | 4.500% | 06/01/2018 | $1,459.15 | May adjust periodically | May adjust periodically | 07/01/2018 | 396 |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step, or simple interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan.   My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

D.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E.  If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

F.  I agree to pay in full the Deferred Principal Balance and any other amounts still owed

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 4 of 10 pages)

**Loan Number** █████████

under the Loan Documents by the earliest of:  (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

G.  If I make a partial prepayment of Principal, the Lender may apply that partial prepayment first to any Deferred Principal Balance before applying such partial prepayment to other amounts due.

4.  **Additional Agreements**.  I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 5 of 10 pages)

██████████████████████████████████████████████

**Loan Number** ███████

the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 6 of 10 pages)

Loan Number ▮▮▮▮▮▮▮▮

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective document, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property, and to

*JL*

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 7 of 10 pages)

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Loan Number ████████

take any action required of Lender ~~including, but not limited to, releasing and canceling the mortgage loan.~~ _𝒪𝒱_

M. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity.   In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

N. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

O. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the New Principal Balance.

P. If my Loan Documents govern a home equity loan or line of credit, then I agree that as of the Modification Effective Date, I am terminating my right to borrow new funds under my home equity loan or line of credit.  This means that I cannot obtain additional advances, and must make payments according to this Agreement.  (Lender may have previously terminated or suspended my right to obtain additional advances under my home equity loan or line of credit, and if so, I confirm and acknowledge that no additional advances may be obtained.)

(SIGNATURES CONTINUE ON FOLLOWING PAGES)

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT   ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 8 of 10 pages)

████████████████████

Loan Number ██████

## TO BE SIGNED BY BORROWER ONLY

**BORROWER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And RONALD ROVITO AND JILL ROVITO HUSBAND AND WIFE, LOAN NUMBER ██████WITH A MODIFICATION EFFECTIVE DATE OF JULY 01, 2011

*AKA JILL M ROVITO*

In Witness Whereof, the Borrower(s) have executed this agreement.

The undersigned hereby acknowledge that the signatures below include the Borrowers on the Loan, and those of any non-borrower co-owner(s) of the Property, or a non-borrower spouse or domestic partner of a Borrower with rights of dower/curtesy/homestead and/or community property under applicable law.  Such additional persons are signing solely to evidence their agreement that all of their right, title and interest in the Property is subject and subordinate to the terms and conditions of this Agreement and the Loan Documents.

_____     Date: 6 / 28 / 11
RONALD ROVITO

_____     Date: 6 / 28 / 11
JILL ROVITO AKA JILL M ROVITO

## CERTIFICATE OF ACKNOWLEDGMENT

State of NEW JERSEY                    )
                                       )
County of ___Bergen___         )

On the __28 th__ day of ___June 2011_____,
before me, ___Laura Benvenuto_____, a Notary Public of the State and County aforesaid personally appeared **RONALD ROVITO  AND JILL ROVITO AKA JILL M ROVITO**, who I am satisfied is/are the Person(s) named in and who executed the within instrument; and he/she/they signed, sealed and delivered the same as his/her/their act and deed for the uses and purposes therein expressed.

_____
Notary Public

(SEAL)
My Commission Expires: April 16, 2012

**LAURA BENVENUTO**
**NOTARY PUBLIC OF NEW JERSEY**
**My Commission Expires April 16, 2012**

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 9 of 10 pages)

██████████████████████████████████████

Loan Number [REDACTED]

### TO BE SIGNED BY LENDER ONLY

**LENDER** SIGNATURE PAGE TO HOME AFFORDABLE MODIFICATION AGREEMENT BETWEEN
JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS
RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA And RONALD
ROVITO AND JILL ROVITO HUSBAND AND WIFE, LOAN NUMBER 0645231341 WITH A
MODIFICATION EFFECTIVE DATE OF JULY 01, 2011
             AKA JILL M ROVITO
In Witness Whereof, the Lender has executed this Agreement.

Lender

**JPMORGAN CHASE BANK, N.A. SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS
RECEIVER FOR WASHINGTON MUTUAL BANK F/K/A WASHINGTON MUTUAL BANK, FA**

By: _Ashley Rupp_

Date: _07·26·11_

Ashley Rupp
Vice President

State of COLORADO
County of DENVER    SS.:

I CERTIFY that on _July 21, 2011_, _Ashley Rupp_
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as Vice President of JPMORGAN CHASE BANK, N.A.
SUCCESSOR IN INTEREST BY PURCHASE FROM THE FDIC, AS RECEIVER FOR WASHINGTON MUTUAL
BANK F/K/A WASHINGTON MUTUAL BANK, FA, a national banking association the entity named in this
instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.

_____,
Name and Title

(SEAL)
My Commission expires: _____

KENNEDY SMITH-FLIESHER
NOTARY PUBLIC
STATE OF COLORADO
MY COMMISSION EXPIRES 2-3-15

JPMC MODIFIED MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie
Mae/Freddie Mac  UNIFORM INSTRUMENT    ver. 06 11 2011 12 05 47   Form 3157 3/09 (rev. 10/10)(CHF rev. 03/11)
(page 10 of 10 pages)

[REDACTED]

Bergen County Clerk            V  BK 00816  PG 1003            08/25/2011 10:34 AM            10 of 10

# ORIGINAL COLLATERAL DOCUMENTS

# START

—————————————— [Space Above This Line For Recording Data] ——————————————

*L790AC.1*                                                    Loan number: ███████
                                                             Investor loan number: ███████

# LOAN MODIFICATION AGREEMENT
## (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 31st day of March, 2016, between
ROVITO, RONALD ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National
Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated January
26, 2005 and recorded in Book or Liber 14177, at page(s) 435, Instrument Number N/A, of the
BERGEN Records of NJ and (2) the Note, bearing the same date as, and secured by, the Security
Instrument, which covers the real and personal property described in the Security Instrument and
defined therein as the "Property," located at
    175 PARIS AVE, NORTHVALE NJ 07647-2027,

the real property described being set forth as follows:
    Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

ROVITO, RONALD ███████
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 1 of 9

1.  As of May 01, 2016, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $430,480.11, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.250%, from April 01, 2016. Borrower promises to make monthly payments of principal and interest of U.S. $1,866.65, beginning on the 1st day of May, 2016, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.250% will remain in effect until principal and interest are paid in full. If on April 01, 2056 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $914.30 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
    (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing May 01, 2016.
    (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
    (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
    (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4.  If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

    If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6.  Borrower understands and agrees that:

    (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

    (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) To execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

7.  Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA.

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

8. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

9. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief

or foreclosure prevention alternative, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

_____    _____
Seterus, Inc.   Authorized Signer                                                           Date

_____    5/27/16
ROVITO, RONALD                                                                       Date

_____ [Space Below This Line For Acknowledgments] _____

CERTIFICATE OF ACKNOWLEDGMENT

State of **NEW JERSEY**

County of Bergen

On the 27th day of May, 2016
before me, Laura Benvenuto, a Notary Public of the State
and County aforesaid personally appeared **ROVITO, RONALD**, who I am satisfied is/are the Person(s) named in
and who executed the within instrument; and (he)/she/they signed, sealed and delivered the same as
(his)/her/their act and deed for the uses and purposes therein expressed.

LAURA BENVENUTO
NOTARY PUBLIC OF NEW JERSEY          Laura Benvenuto
My Commission Expires April 16, 201      Notary Public

(SEAL)
My Commission Expires: 4/16/17


State of OREGON
County of WASHINGTON    SS.:

I CERTIFY that on _____, _____
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as Authorized Signer of Seterus, Inc., the entity named in
this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.



_____
Name and Title
Printed Name:

(SEAL)
My Commission expires: _____


ROVITO, RONALD ▮▮▮▮▮▮
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  1.01 (rev. 06.12)    Page 7 of 9

ROVITO, RONALD ███████
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179  1.01 (rev.  06.12)      Page 8 of 9

**Exhibit A**

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Northvale, County of Bergen State of New Jersey: BEGINNING at the point of intersection of the northeasterly sideline of Paris Avenue (46 feet wide) and the northwesterly sideline of Franklin Street (38 feet wide) and from the thence running: I. North 52 degrees 32 minutes 00 seconds West, along the northeasterly sideline of Paris Avenue, 100.00 feet to a point; thence - 2. North 37 degrees 32 minutes 30 seconds East 90.00 feet to a point; thence 3. South 52 degrees 32 minutes 00 seconds East 100.00 feet to a pointin the northwesterly sideline of Franklin Street; thence 4. South 37 degrees 32 minutes 30 seconds West, along the northwesterly sideline of Franklin Street, 90.00 feet to the point and place of BEGINNING.
Also Known As: 175 PARIS AVE, NORTHVALE, NJ 07647-2027

———————————————[Space Above This Line For Recording Data]———————————————

*L790AC.1*                                        Loan number: ███████
                                                  Investor loan number ███████

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 31st day of March, 2016, between
ROVITO, RONALD ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National
Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or
Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated January
26, 2005 and recorded in Book or Liber 14177, at page(s) 435, Instrument Number N/A, of the
BERGEN Records of NJ and (2) the Note, bearing the same date as, and secured by, the Security
Instrument, which covers the real and personal property described in the Security Instrument and
defined therein as the "Property," located at
        175 PARIS AVE, NORTHVALE NJ 07647-2027,

the real property described being set forth as follows:
        Property Legal Description - See Attached Exhibit A

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as
follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

ROVITO, RONALD    ███████
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT      Form 3179  1.01 (rev. 06.12)      Page 1 of 9

1. As of May 01, 2016, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $430,480.11, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2. Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 4.250%, from April 01, 2016. Borrower promises to make monthly payments of principal and interest of U.S. $1,866.65, beginning on the 1st day of May, 2016, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 4.250% will remain in effect until principal and interest are paid in full. If on April 01, 2056 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3. In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $914.30 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
   (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing May 01, 2016.
   (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
   (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.
   (d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay

these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5.  Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

    (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6.  Borrower understands and agrees that:

    (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

    (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

    (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

    (d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

    (e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) To execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

7. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA.

Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

8. Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

9. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief

or foreclosure prevention alternative, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

Seterus, Inc.   Authorized Signer

ROVITO, RONALD

Date

Date  6/27/16

ROVITO, RONALD ▉▉▉▉▉▉

LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT     Form 3179  1.01 (rev. 06.12)     Page 6 of 9

_____ [Space Below This Line For Acknowledgments] _____

## CERTIFICATE OF ACKNOWLEDGMENT

State of **NEW JERSEY**                          )
                                                 )
County of Bergen                                 )

        On the 27th day of May, 2016,
before me, Laura Benvenuto, a Notary Public of the State
and County aforesaid personally appeared **ROVITO, RONALD**, who I am satisfied is/are the Person(s) named in
and who executed the within instrument; and he/she/they signed, sealed and delivered the same as
his/her/their act and deed for the uses and purposes therein expressed.

        **LAURA BENVENUTO**
        **NOTARY PUBLIC OF NEW JERSEY**              _Laura Benvenuto_
        **My Commission Expires April 16, 2017**      Notary Public

(SEAL)
My Commission Expires: 4/16/17


State of OREGON
County of WASHINGTON    SS.:

I CERTIFY that on _____, _____ _____
personally came before me and stated to my satisfaction that this person (or if more than one, each person):
(a) was the maker of the attached instrument;
(b) was authorized to and did execute this instrument as Authorized Signer of Seterus, Inc., the entity named in
this instrument; and,
(c) executed this instrument as the act of the entity named in this instrument.


                                        _____
                                        Name and Title
                                        Printed Name:

(SEAL)
My Commission expires: _____

ROVITO, RONALD ▉▉▉▉▉▉
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT    Form 3179  L.01 (rev. 06.12)    Page 7 of 9

**Exhibit A**

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Northvale, County of Bergen State of New Jersey: BEGINNING at the point of intersection of the northeasterly sideline of Paris Avenue (46 feet wide) and the northwesterly sideline of Franklin Street (38 feet wide) and from the thence running: I. North 52 degrees 32 minutes 00 seconds West, along the northeasterly sideline of Paris Avenue, 100.00 feet to a point; thence - 2. North 37 degrees 32 minutes 30 seconds East 90.00 feet to a point; thence 3. South 52 degrees 32 minutes 00 seconds East 100.00 feet to apointin the northwesterly sideline of Franklin Street; thence 4. South 37 degrees 32 minutes 30 seconds West, along the northwesterly sideline of Franklin Street, 90.00 feet to the point and place of BEGINNING.
Also Known As: 175 PARIS AVE, NORTHVALE, NJ 07647-2027

ROVITO, RONALD
LOAN MODIFICATION AGREEMENT—Single Family—Fannie Mae UNIFORM INSTRUMENT        Form 3179  1.01 (rev. 06.12)        Page 9 of 9

# ORIGINAL COLLATERAL DOCUMENTS

# STOP

**FedEx**®

Express

ORIGIN ID:EHTA    (866) 570-5277
SETERUS, INC
SETERUS, INC
758 RAINBOW ROAD
L790
WINDSOR, CT 06095
UNITED STATES US

SHIP DATE: 01APR16
ACTWGT: 1.00 LB
CAD:

TO   SETERUS, INC
     SETERUS, INC
     758 RAINBOW ROAD
     L790
     WINDSOR CT 06095
     (866) 570-5277
INV:
PO:                    REF:
RMA:                        DEPT:

**FedEx**®
Express

**E**

REL#

RETURNS MON-SAT

WED - 01 JUN 10:30A
PRIORITY OVERNIGHT

**FedEx**
TRK#

**EB EHTA**

CT-US
PPL

Extremely Urgent

R
ST                                    **E**

◄ Insert shipping
document here.

Align top of FedEx Express® shipping label here.

Envelope

earthsmart

FedEx carbon-neutral
envelope shipping

Express

FedEx